# UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| TANIA VANESSA ORTIZ-CHAVEZ, | Case No. 1:26-cv-01182-JLT-SAB-HC |
| Petitioner, | FINDINGS AND RECOMMENDATION TO GRANT IN PART AND DENY IN PART PETITION FOR WRIT OF HABEAS CORPUS AND DIRECT RESPONDENTS TO PROVIDE PETITIONER WITH BOND HEARING |
| v. | |
| CHRISTOPHER CHESTNUT, et al., | |
| Respondents. | |

Petitioner is an immigration detainee proceeding with a petition for writ of habeas corpus pursuant to 28 U.S.C. § 2241.

## I.

## BACKGROUND

Petitioner is a citizen of El Salvador who entered the United States in approximately 2007 and has lived here continuously for eighteen years. She is the primary caregiver for her two U.S. citizen children. (ECF No. 1 at 2.[1]) On June 21, 2025, Petitioner was outside her mother's residence when she was arrested. (Id. at 4.) Petitioner was denied bond in November 2025. (Id. at 5.) On March 5, 2026, an immigration judge ("IJ") issued an order of removal. (ECF No. 9 at 19–22.) Petitioner has filed an appeal of the IJ's decision. (ECF No. 10 at 3.)

On February 10, 2026, Petitioner filed a petition for writ of habeas corpus and a motion for temporary restraining order ("TRO"). (ECF Nos. 1, 2.) The assigned district judge denied the

---

[1] Page numbers refer to the ECF page numbers stamped at the top of the page.

motion for TRO as untimely. (ECF No. 8.) Respondents have filed a response, and Petitioner has filed a reply. (ECF Nos. 9, 10.)

## II.

## DISCUSSION

### A. Arrest

The petition alleges that on June 21, 2025, Petitioner was outside her mother's residence moving her vehicle when a truck approached and three men exited. The men wore plain clothes, displayed no badges, identified no agency, and presented no warrant. Despite Petitioner not resisting, the men threw Petitioner to the ground, dragged her by her legs, and forced her into their vehicle while Petitioner's twelve-year-old son watched. The petition alleges that Petitioner repeatedly requested an arrest warrant but the agents refused to respond and ordered her to remain silent. Petitioner did not know who had taken her. (ECF No. 1 at 3–4.)

Respondents have submitted a copy of a Form I-213,[2] which states that on "September 25, 2007, the Specialized Magistrate's Court of San Salvador, in El Salvador, issued an arrest warrant under case number 1883, for [Petitioner] for the offense of extortion."[3] (ECF No. 9 at 8.) On May 28, 2025, U.S. Immigration and Customs Enforcement ("ICE") Enforcement and Removal Operations ("ERO") Los Angeles Foreign Fugitive Unit ("FFU") "received a lead referral from the ICE Attache in San Salvador, El Salvador, identifying [Petitioner] as the subject of a foreign arrest warrant issued by the Government of El Salvador, [and] request[ing] the arrest of [Petitioner] for the offense of extortion." (Id.)

> On July 21, 2025, the Los Angeles Foreign Fugitive Unit (FFU) officers, working in conjunction with the United States Marshals Service, went to the area of [REDACTED] in search of [Petitioner], a citizen and national of El Salvador and a foreign fugitive wanted by the Government of El Salvador. The information concerning the location of [Petitioner] was based on commercially available database information and surveillance. Upon arriving at what was believed to be the area of [Petitioner]'s residence, the decision was made to canvass the area around the location to see if any vehicles registered to [Petitioner] could be located. One vehicle registered to [Petitioner] was located so the decision was

---

[2] "A Form I-213 is 'a recorded recollection of a[n INS agent's] conversation with the alien' which 'border agents routinely complete after interviewing aliens.'" Smith v. Garland, 103 F.4th 663, 665 (9th Cir. 2024) (alteration in original) (quoting Espinoza v. INS, 45 F.3d 308, 310 & n.1 (9th Cir. 1995)).

[3] In the reply, Petitioner provides a certificate from the Directorate General of Penal Centers that no criminal record exists for Petitioner in El Salvador and an apostille authentication. (ECF No. 10 at 9–10, 12–13.)

made to wait and see if [Petitioner] would exit of her own volition. At approximately 0645 a single female was seen exiting the target address and walk towards a vehicle bearing the California license plate [REDACTED] parked on the street in front of the neighboring house. Based on available photos and physical description the female was believed to be the target [Petitioner].

Officers approached [Petitioner] prior to her entering her vehicle. The officers, wearing clearly marked agency identifiers, identified themselves as ICE officers and inquired as to the identity of the individual who then identified herself as [Petitioner]. Based on available photographs it was established the individual was in fact the target. Officers also established that [Petitioner] is a citizen and national of El Salvador, without legal status in the United States. Following her arrest [Petitioner] was transported to the Los Angeles Field Office for processing.

(ECF No. 9 at 7–8.)

### 1.  Fourth Amendment

In Claim 1 of the petition, Petitioner asserts a Fourth Amendment unlawful seizure claim. (ECF No. 1 at 8.) Petitioner argues that "[w]arrantless arrests require probable cause and administrative authorization" and "[r]acialized or warrantless civil seizures violate the Fourth Amendment." (Id. at 4.) Respondents contend that as "Petitioner was arrested pursuant to an administrative warrant," "Petitioner's Fourth Amendment arguments are not supported by the evidence." (ECF No. 9 at 4.)

"[T]he Supreme Court [has] opined that, consistent with the Fourth Amendment, immigration authorities may arrest individuals for civil immigration removal purposes pursuant to an administrative arrest warrant issued by an executive official, rather than by a judge." Gonzalez v. United States Immigr. & Customs Enf't, 975 F.3d 788, 825 (9th Cir. 2020) (citing Abel v. United States, 362 U.S. 217, 230–34 (1960)). Here, Respondents have submitted a copy of the administrative warrant. (ECF No. 9 at 16.) As Petitioner was arrested pursuant to administrative warrant, the Court recommends denying Claim 1 of the petition.

### 2.  Egregious Government Conduct

In Claim 2 of the petition, Petitioner asserts egregious government conduct that "shocks the conscience and taints detention," citing to Gonzalez-Rivera v. INS, 22 F.3d 1441 (9th Cir. 1994). (ECF No. 1 at 8.) Petitioner specifically notes the violent seizure, the agents' lack of identification, the lack of a warrant, and the trauma experienced by her son watching her seizure. (ECF No. 1 at 4.) Respondents argue that Petitioner's reliance on Gonzalez-Rivera "is

misplaced" because that case concerned "a petition for review of a Board of Immigration decision vacating an immigration judge's decision about the lawfulness (constitutionality) of a stop of an alien by Border Patrol officers based on an alien's Hispanic appearance. This has nothing to do with the facts of the instant case." (ECF No. 9 at 3–4.)

The Court agrees with Respondent that Gonzalez-Rivera is inapposite. Gonzalez-Rivera concerned a motion to suppress evidence obtained as a result of a vehicle stop based solely on Gonzalez's Hispanic appearance, which Gonzalez argued constituted an egregious violation of his Fourth Amendment rights. Gonzalez-Rivera, 22 F.3d at 1442–43. Here, Petitioner is not moving to suppress evidence obtained as a result of an egregious Fourth Amendment violation. Accordingly, the Court recommends denying Claim 2 of the petition.

**B. Procedural Due Process**

In Claim 3 of the petition, Petitioner asserts that "[p]rolonged detention without adequate safeguards violates due process." (ECF No. 1 at 8.) Respondents argue that "[a]s an applicant for admission, petitioner is subject to mandatory detention and thus ineligible for a bond hearing." (ECF No. 9 at 3.)

1. Overview of Caselaw Regarding Immigration Detention Statutes

An intricate statutory scheme governs the detention of noncitizens during removal proceedings and after a final removal order is issued. "Where an alien falls within this statutory scheme can affect whether his detention is mandatory or discretionary, as well as the kind of review process available to him if he wishes to contest the necessity of his detention." Prieto-Romero v. Clark, 534 F.3d 1053, 1057 (9th Cir. 2008).

"Four statutes grant the Government authority to detain noncitizens who have been placed in removal proceedings: 8 U.S.C. §§ 1225(b) ('Section 1225(b)'), 1226(a) ('Subsection A'), 1226(c) ('Subsection C'), and 1231(a) ('Section 1231(a)')." Avilez v. Garland, 69 F.4th 525, 529 (9th Cir. 2023). "Subsection A is the default detention statute for noncitizens in removal proceedings and applies to noncitizens '[e]xcept as provided in [Subsection C].'" Avilez, 69 F.4th at 529 (alteration in original) (quoting 8 U.S.C. § 1226(a)). "[D]etention under Subsection A is discretionary" and "provides for release on bond or conditional parole." Id.

4

"Subsection C provides for the detention of 'criminal aliens' and states that '[t]he Attorney General shall take into custody any alien who' is deportable or inadmissible based on a qualifying, enumerated offense." Id. at 530 (alteration in original) (quoting 8 U.S.C. § 1226(c)). "[D]etention under Subsection C is mandatory," and "[r]elease under Subsection C is limited to certain witness protection purposes." Id. "Section 1231(a) applies to detention after the entry of a final order of removal" and "governs detention during a ninety-day 'removal period' after the conclusion of removal proceedings." Id. at 530–31.

"[I]n a series of decisions since 2001, 'the Supreme Court and [the Ninth Circuit] have grappled in piece-meal fashion with whether the various detention statutes may authorize indefinite or prolonged detention of detainees and, if so, may do so without providing a bond hearing.'" Rodriguez v. Robbins (Rodriguez II), 715 F.3d 1127, 1134 (9th Cir. 2013) (quoting Rodriguez v. Hayes (Rodriguez I), 591 F.3d 1105, 1114 (9th Cir. 2010)). In Zadvydas v. Davis, 533 U.S. 678 (2001), two noncitizens, who had been ordered removed but whose removal could not be effectuated due to lack of a repatriation treaty or because their designated countries refused to accept them, challenged their prolonged detention under 8 U.S.C. § 1231(a)(6), which governs detention beyond the ninety-day removal period. Applying the canon of constitutional avoidance because a "statute permitting indefinite detention of an alien would raise a serious constitutional problem," the Supreme Court "read an implicit limitation into" § 1231(a)(6) and held that the statute "limits an alien's post-removal-period detention to a period reasonably necessary to bring about that alien's removal from the United States." Zadvydas, 533 U.S. at 689. Thus, "after a presumptively reasonable six-month period of post-removal period detention, the alien was entitled to release if he successfully demonstrated that there was 'good reason to believe there is no significant likelihood of removal in the reasonably foreseeable future.'" Prieto-Romero, 534 F.3d at 1062 (quoting Zadvydas, 533 U.S. at 701).

In Demore v. Kim, 538 U.S. 510 (2003), the Supreme Court rejected a facial challenge to mandatory detention under 8 U.S.C. § 1226(c). Demore distinguished Zadvydas by emphasizing detention under § 1226(c) has a "definite termination point" and "in the majority of the cases it lasts for less than the 90 days we considered presumptively valid in Zadvydas." Id. at 529 (noting

that "in 85% of the cases in which aliens are detained pursuant to § 1226(c), removal proceedings are completed in an average time of 47 days and a median of 30 days" and "[i]n the remaining 15% of cases, in which the alien appeals the decision of the Immigration Judge to the Board of Immigration Appeals, appeal takes an average of four months, with a median time that is slightly shorter").[4] However, Justice Kennedy's concurring opinion, which created the majority rejecting the facial challenge to mandatory detention under § 1226(c), specifically noted that "a lawful permanent resident alien such as respondent could be entitled to an individualized determination as to his risk of flight and dangerousness if the continued detention became unreasonable or unjustified." Demore, 538 U.S. at 532 (Kennedy, J., concurring).

In the Rodriguez class action, noncitizens "challenge[d] their prolonged detention pursuant to 8 U.S.C. §§ 1225(b), 1226(a), 1226(c), and 1231(a) without individualized bond hearings and determinations to justify their continued detention." Rodriguez v. Robbins (Rodriguez III), 804 F.3d 1060, 1065 (9th Cir. 2015). In Rodriguez II, to avoid constitutional concerns, the Ninth Circuit held that mandatory detention under § 1226(c) and § 1225(b) is implicitly time-limited and expires after six months. Thereafter, the government's authority to detain shifts to § 1226(a), which requires a bond hearing governed by the procedural requirements set forth in Singh v. Holder, 638 F.3d 1196 (9th Cir. 2011).[5] Rodriguez II, 715 F.3d at 1138–44. In Rodriguez III, the Ninth Circuit held that for noncitizens detained under 8 U.S.C. §§ 1225(b), 1226(a), and 1226(c), "the government must provide periodic bond hearings every

---

[4] "Thirteen years after the decision in Demore, the government admitted that the figures it provided to the Court, and which the Court relied on, contained 'several significant errors.'" Rodriguez v. Nielsen, No. 18-cv-04187-TSH, 2019 WL 7491555, at *5 (N.D. Cal. Jan. 7, 2019) (citations omitted). Although the "Supreme Court had inferred from the government's brief in Demore that in cases in which the alien appeals, the time of detention was 'about five months,'" the government's 2016 letter clarified that for years 1999–2001, the "length of detention in cases where the alien appealed [was] 382 days, or a little more than a year." Id. (citations omitted).

> [I]n cases in which an appeal *was* filed, in most years the *average* length of detention was more than 300 days, or more than double the five-month estimate the Court relied on in Demore. The data from the Jennings case show that 460 members of the respondent section 1226(c) subclass were detained for an average of 427 days (over fourteen months) with some individual detention periods exceeding four years. Indeed, when the GAO conducted a study, it found that as of 2015, the median length of time it takes the BIA to complete an appeal of a removal order exceeds 450 days.

Rodriguez, 2019 WL 7491555, at *5 (citations omitted).

[5] In Singh, the Ninth Circuit provided guidance as to the procedural requirements for the bond hearings. Specifically, "the government must prove by clear and convincing evidence that an alien is a flight risk or a danger to the community to justify denial of bond." Singh, 638 F.3d at 1208. Due process also requires a contemporaneous record of the bond hearings, such as a transcript or audio recording. Id.

six months so that noncitizens may challenge their continued detention as 'the period of . . . confinement grows.'" Rodriguez III, 804 F.3d at 1089 (quoting Diouf v. Napolitano (Diouf II), 634 F.3d 1081, 1091 (9th Cir. 2011)).

In Jennings v. Rodriguez, 583 U.S. 281 (2018), the Supreme Court rejected the Ninth Circuit's interpretation that §§ 1225(b) and 1226(c) included "an implicit 6–month time limit on the length of mandatory detention" and reversed Rodriguez III, holding that the Ninth Circuit misapplied the constitutional avoidance canon to find a statutory right under 8 U.S.C. § 1226(a) to "periodic bond hearings every six months in which the Attorney General must prove by clear and convincing evidence that the alien's continued detention is necessary." Jennings, 583 U.S. at 296, 304, 306. The Supreme Court remanded the case to the Ninth Circuit "to consider [the] constitutional arguments on their merits." Id. at 312. The Ninth Circuit, in turn, remanded the case to the district court to consider the constitutional arguments in the first instance, but noted that it had "grave doubts that any statute that allows for arbitrary prolonged detention without any process is constitutional or that those who founded our democracy precisely to protect against the arbitrary deprivation of liberty would have thought so." Rodriguez v. Marin, 909 F.3d 252, 255, 256 (9th Cir. 2018).

Following Jennings, the Ninth Circuit upheld the "construction of § 1231(a)(6) to require a bond hearing before an IJ after six months of detention for an alien whose release or removal is not imminent" with the government "bear[ing] a clear and convincing burden of proof at such a bond hearing to justify an alien's continued detention." Aleman Gonzalez v. Barr, 955 F.3d 762, 766 (9th Cir. 2020). The Supreme Court reversed on other grounds, Garland v. Aleman Gonzalez, 596 U.S. 543, 546 (2022), and "[i]n a companion case decided that same day arising from the Third Circuit, *Johnson v. Arteaga-Martinez*, [596] U.S. [573], 142 S. Ct. 1827, 213 L.Ed.2d 125 (2022), the Supreme Court separately rejected [the Ninth Circuit's] statutory interpretation in *Aleman Gonzalez*," Rodriguez Diaz v. Garland, 53 F.4th 1189, 1201 (9th Cir. 2022), holding that "there is no plausible construction of the text of § 1231(a)(6) that requires the Government to provide bond hearings before immigration judges after six months of detention, with the Government bearing the burden of proving by clear and convincing evidence that a

detained noncitizen poses a flight risk or a danger to the community," Arteaga-Martinez, 596 U.S. at 581. Arteaga-Martinez declined to reach the constitutional claims. Id. at 583.

"[A]fter the Supreme Court's decisions in *Jennings* and *Arteaga-Martinez*, it remain[ed] undetermined whether the Due Process Clause requires additional bond procedures under *any* immigration detention statute" until the Ninth Circuit's decision in Rodriguez Diaz, which concerned a petitioner detained pursuant to 8 U.S.C. § 1226(a) who sought a second bond hearing before an IJ at which the government would bear the burden of proof by clear and convincing evidence. Rodriguez Diaz, 53 F.4th at 1201, 1193. The Ninth Circuit held that "due process does not require the procedures Rodriguez Diaz would have us impose" because "Section 1226(a) offers substantial procedural protections to detained persons, and Rodriguez Diaz has not shown that these procedures violate due process, either facially or as applied." Id.

2. Analysis

Here, Respondents contend that Petitioner is subject to mandatory detention under 8 U.S.C. § 1225(b).[6] (ECF No. 9 at 2–3.) The Ninth Circuit has yet to take a position on whether due process requires a bond hearing for noncitizens detained under 8 U.S.C. § 1225(b). However, the Ninth Circuit has recognized that "district courts throughout this circuit have ordered immigration courts to conduct bond hearings for noncitizens held for prolonged periods under § 1226(c)" based on due process and noted that "[a]ccording to one such court order, the 'prolonged mandatory detention pending removal proceedings, without a bond hearing, will—at some point—violate the right to due process.'" Martinez v. Clark, 36 F.4th 1219, 1223 (9th Cir.

---

[6] It appears that Petitioner is being subjected to Respondents' "policy requir[ing] ICE employees to consider anyone arrested in the United States and charged with being inadmissible as an 'applicant for admission' under 8 U.S.C. § 1225(b)(2)(A)" and "subject to mandatory detention." Maldonado Bautista v. Santacruz, No. 5:25-cv-01873-SSS-BFM, --- F. Supp. 3d ----, 2025 WL 3713987, at *1 (C.D. Cal. Dec. 18, 2025), judgment entered sub nom. Maldonado Bautista v. Noem, No. 5:25-cv-01873-SSS-BFM, 2025 WL 3678485 (C.D. Cal. Dec. 18, 2025). "District courts around the country have rejected the government's position that section 1225(b)(2) permits it to pursue mandatory detention against noncitizens who have not been lawfully admitted but have been present in the country for years." Valencia Zapata v. Kaiser, 801 F. Supp. 3d 919, 936 (N.D. Cal. 2025) (citing Salcedo Aceros v. Kaiser, No. 25-CV-06924-EMC (EMC), 2025 WL 2637503, at *8 (N.D. Cal. Sept. 12, 2025) (collecting cases)). "Here in the Eastern District of California, recent decisions have largely rejected the government's interpretation of Section 1225(b)(2) as applicable to all 'applicants for admission.'" Valencia v. Chestnut, No. 1:25-cv-01550 WBS JDP, 2025 WL 3205133, at *2 (E.D. Cal. Nov. 17, 2025) (collecting cases). However, the petition does not challenge the statutory basis for Petitioner's detention, and the Court's analysis and conclusion on Claim 3 "is based on the length of [Petitioner]'s detention without a hearing, not the statutory basis for [her] detention." Doe v. Becerra, 697 F. Supp. 3d. 937, 943 (N.D. Cal. 2023).

2022) (citation omitted), vacated on other grounds, 144 S. Ct. 1339 (2024). Further, the First, Second, and Third Circuits have found that "the Due Process Clause imposes some form of 'reasonableness' limitation upon the duration of detention . . . under [section 1226(c)]." Reid v. Donelan, 17 F.4th 1, 7 (1st Cir. 2021) (alterations in original) (citation omitted). Accord Black v. Decker, 103 F.4th 133, 138 (2d Cir. 2024) ("conclud[ing] that a noncitizen's constitutional right to due process precludes his unreasonably prolonged detention under section 1226(c) without a bond hearing"); German Santos v. Warden Pike Cnty. Corr. Facility, 965 F.3d 203, 209–10 (3d Cir. 2020) (holding that after Demore and Jennings, petitioners detained pursuant to § 1226(c) can still bring as-applied challenges to their detention and that due process affords them a bond hearing once detention becomes unreasonable). Contra Banyee v. Garland, 115 F.4th 928 (8th Cir. 2024).

Based on the foregoing, the Court recommends finding that unreasonably prolonged mandatory detention under 8 U.S.C. § 1225(b) without an individualized bond hearing violates due process. The Court now turns to whether Petitioner's detention has become unreasonably prolonged such that due process requires a bond hearing.

Courts in this circuit have taken various approaches to determining whether procedural due process requires a bond hearing in a particular case. See Rodriguez v. Nielsen, No. 18-cv-04187-TSH, 2019 WL 7491555, at *6 (N.D. Cal. Jan. 7, 2019) (six-month bright-line rule in § 1226(c) context); Banda v. McAleenan, 385 F. Supp. 3d 1099, 1117 (W.D. Wash. 2019) (six-factor test that considers "(1) the total length of detention to date; (2) the likely duration of future detention; (3) the conditions of detention; (4) delays in the removal proceedings caused by the detainee; (5) delays in the removal proceedings caused by the government; and (6) the likelihood that the removal proceedings will result in a final order of removal" in § 1225(b) context); Juarez v. Wolf, No. C20-1660-RJB-MLP, 2021 WL 2323436, at *4 (W.D. Wash. May 5, 2021) (eight-factor test that considers "whether the detention will exceed the time the petitioner spent in prison for the crime that made him [or her] removable" and "the nature of the crimes the petitioner committed" in addition to the six factors set forth above in § 1226(c) context (alteration in original)), report and recommendation adopted, 2021 WL 2322823 (W.D. Wash.

June 7, 2021); Henriquez v. Garland, No. 5:22-cv-00869-EJD, 2022 WL 2132919, at *5–6 (N.D. Cal. June 14, 2022) (applying Mathews v. Eldridge test to petitioner's due process claim requesting initial bond hearing in § 1226(c) context).

This Court previously found that "[t]o determine whether § 1226(c) detention has become unreasonable, the Court will look to the total length of detention to date, the likely duration of future detention, and the delays in the removal proceedings caused by the petitioner and the government." Lopez v. Garland, 631 F. Supp. 3d 870, 879 (E.D. Cal. 2022). Here, there is no information before this Court regarding the likely duration of future detention and the delays in the removal proceedings caused by Petitioner and the government. Accordingly, the Court will apply the three-part test set forth in Mathews v. Eldridge, 424 U.S. 319 (1976). See Rodriguez Diaz, 53 F.4th at 1193, 1206 ("assum[ing] without deciding," in context of petitioner detained under to 8 U.S.C. § 1226(a) seeking a second bond hearing, that Mathews test applied, noting the Ninth Circuit has "regularly applied *Mathews* to due process challenges to removal proceedings," and finding "*Mathews* remains a flexible test that can and must account for the heightened governmental interest in the immigration detention context"); id. at 1219 (Wardlaw, J., dissenting) ("agree[ing] that the test developed in *Mathews v. Eldridge*, 424 U.S. 319, 96 S.Ct. 893, 47 L.Ed.2d 18 (1976), is the appropriate legal framework to determine whether there was a due process violation").

> [I]dentification of the specific dictates of due process generally requires consideration of three distinct factors. First, the private interest that will be affected by the official action; second, the risk of erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards; and finally, the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirements would entail.

Mathews, 424 U.S. at 334.

### a. Private Interest

It "is beyond dispute" that Petitioner's interest here is "fundamental." Hernandez v. Sessions, 872 F.3d 976, 993 (9th Cir. 2017) (citing Foucha v. Louisiana, 504 U.S. 71, 80 (1992)). "Freedom from imprisonment—from government custody, detention, or other forms of physical restraint—lies at the heart of the liberty [the Due Process] Clause protects." Zadvydas, 533 U.S.

at 690. See Rodriguez Diaz, 53 F.4th at 1207 ("We have also held, more generally, that an individual's private interest in 'freedom from prolonged detention' is 'unquestionably substantial.'" (quoting Singh, 638 F.3d at 1208)). Petitioner "has a legitimate and reasonably strong private liberty interest under *Mathews.*" Rodriguez Diaz, 53 F.4th at 1207. Accordingly, the Court finds the first Mathews factor weighs in favor of Petitioner.

### b. Risk of Erroneous Deprivation

"In evaluating the risk of erroneous deprivation in the context of noncitizen detention, the Ninth Circuit has looked to whether the detainee has a statutory right to procedural protections, such as individualized custody determinations and the right to seek additional bond hearings throughout detention." Jensen v. Garland, No. 5:21-cv-01195-CAS (AFM), 2023 WL 3246522, at *6 (C.D. Cal. May 3, 2023). Here, Respondents contend that Petitioner is subject to mandatory detention under 8 U.S.C. § 1225(b). (ECF No. 9 at 2–3.) Thus, Petitioner does not have a statutory right to bond hearings. See Jennings, 583 U.S. at 297 ("[N]either § 1225(b)(1) nor § 1225(b)(2) says anything whatsoever about bond hearings."). Where, as here, Petitioner is not statutorily entitled to any bond or custody redetermination hearing before a neutral decisionmaker, the risk of erroneous deprivation of liberty is high. See Rodriguez II, 715 F.3d at 1144 ("not[ing] that the discretionary parole system available to § 1225(b) detainees is not sufficient to overcome the constitutional concerns raised by prolonged mandatory detention" because the "parole process is purely discretionary and its results are unreviewable by IJs" and "release decisions are based on humanitarian considerations and the public interest"). Accordingly, the Court finds the second Mathews factor weighs in favor of Petitioner.

### c. Government Interest

"[T]he government clearly has a strong interest in preventing aliens from 'remain[ing] in the United States in violation of our law.'" Rodriguez Diaz, 53 F.4th at 1208 (quoting Demore, 538 U.S. at 518, 515). "These are interests of the highest order that only increase with the passage of time." Rodriguez Diaz, 53 F.4th at 1208. "The government interest in immigration enforcement in general is surely substantial. But the question here is not the government's interest in immigration enforcement [in general] but its interest in" detaining Petitioner without

providing him with a bond hearing. Zerezghi v. United States Citizenship & Immigr. Servs., 955 F.3d 802, 810 (9th Cir. 2020). See Zagal-Alcaraz v. ICE Field Off., No. 3:19-cv-01358-SB, 2020 WL 1862254, at *7 (D. Or. Mar. 25, 2020) (The "government interest at stake here is not the continued detention of Petitioner, but the government's ability to detain him without a bond hearing."), report and recommendation adopted, 2020 WL 1855189 (D. Or. Apr. 13, 2020); Henriquez, 2022 WL 2132919, at *5 ("Although the Government has a strong interest in enforcing the immigration laws and in ensuring that lawfully issued removal orders are promptly executed, the Government's interest in detaining Petitioner without providing an individualized bond hearing is low."). Accordingly, the Court finds the third Mathews factor weighs in favor of Petitioner.

Based on the foregoing, the Court recommends finding that Petitioner is entitled to relief on Count 3 and due process requires Petitioner be provided a bond hearing.

**C. Substantive Due Process and Family Integrity**

In Count 4 of the petition, Petitioner asserts that "[f]amily separation + excessive force constitute unconstitutional punishment." (ECF No. 1 at 8.) Petitioner contends that the "government violently seized Petitioner in front of her minor child" and because "[f]amily unity is a protected liberty interest," "[g]overnment conduct causing unnecessary family trauma violates substantive due process." (Id. at 7.)

To violate "the well-established substantive due process right to family integrity," "the alleged conduct must 'shock[ ] the conscience' and 'offend the community's sense of fair play and decency.'" Marsh v. Cnty. of San Diego, 680 F.3d 1148, 1154 (9th Cir. 2012) (alternation in original) (quoting Rochin v. California, 342 U.S. 165, 172–73 (1952)). The Court finds Aguilar v. U.S. Immigration & Customs Enforcement Division of the Department of Homeland Security, 510 F.3d 1 (1st Cir. 2007), instructive and persuasive. Aguilar involved hundreds of undocumented noncitizens who were detained following a raid on a factory in Massachusetts. Due to a shortage of bed space in Massachusetts, ICE transported a substantial number of the detainees to distant locations, such as Texas. Id. at 6. The Aguilar class alleged that ICE's actions violated, *inter alia*, their substantive due process rights of family integrity and of parents to make

decisions as to the care, custody, and control of their children. Id. at 7, 18–19. In finding that there was no violation of the class's substantive due process rights, the First Circuit stated:

> Our thinking is influenced by a realization that the evenhanded enforcement of the immigration laws, in and of itself, cannot conceivably be held to violate substantive due process. *See Payne–Barahona*, 474 F.3d at 2; *de Robles v. INS*, 485 F.2d 100, 102 (10th Cir. 1973). Any interference with the right to family integrity alleged here was incidental to the government's legitimate interest in effectuating detentions pending the removal of persons illegally in the country. *See Demore*, 538 U.S. at 523, 123 S.Ct. 1708 (recognizing "detention during deportation proceedings as a constitutionally valid aspect of the deportation process").

> This is critically important because every such detention of a parent, like every lawful arrest of a parent, runs the risk of interfering in some way with the parent's ability to care for his or her children. *See Payne–Barahona*, 474 F.3d at 3. That a detention has an impact on the cohesiveness of a family unit is an inevitable concomitant of the deprivation of liberty inherent in the detention itself. So long as the detention is lawful, that so-called deprivation of the right to family integrity does not violate the Constitution.

> We hold, therefore, that such an incidental interference, standing alone, is not of constitutional magnitude. To rule otherwise would risk turning every lawful detention or arrest of a parent into a substantive due process claim. That would place new and unprecedented constraints on law enforcement activities. Such constraints would be unwarranted.

> . . .

> We see the matter this way. Although the interest of parents in the care, custody, and control of their offspring is among the most venerable of the liberty interests protected by the Fifth Amendment, *see, e.g., Troxel*, 530 U.S. at 65, 120 S.Ct. 2054; *Hatch v. Dep't for Children, Youth & Their Families*, 274 F.3d 12, 20 (1st Cir. 2001), the petitioners have not demonstrated that this guarantee of substantive due process encompasses their assertions. After all, the right to family integrity has been recognized in only a narrow subset of circumstances.

> To be sure, the petitioners cite cursorily to cases that deal with this right but they conspicuously fail to build any bridge between these cases and the facts that they allege. We do not think that this is an accident. The petitioners' claims seem markedly different from those scenarios that courts heretofore have recognized under the rubric of family integrity. They have not alleged that the government has interfered permanently with their custodial rights. *See, e.g., Stanley v. Illinois*, 405 U.S. 645, 649, 92 S.Ct. 1208, 31 L.Ed.2d 551 (1972). Nor have they alleged that the government has meddled with their right to make fundamental decisions regarding their children's education, *see, e.g., Meyer v. Nebraska*, 262 U.S. 390, 400, 43 S.Ct. 625, 67 L.Ed. 1042 (1923), or religious affiliation, *see, e.g., Wisconsin v. Yoder*, 406 U.S. 205, 232, 92 S.Ct. 1526, 32 L.Ed.2d 15 (1972). Taken most favorably to the petitioners, the interference alleged here is transitory in nature and in no way impinges on parental prerogatives to direct the upbringing of their children.

> We have scoured the case law for any authority suggesting that claims similar to those asserted here are actionable under the substantive component of the Due

13

Process Clause, and we have found none. That chasm is important because, given the scarcity of "guideposts for responsible decisionmaking in this unchartered area," courts must be "reluctant to expand the concept of substantive due process." *Washington v. Glucksberg*, 521 U.S. 702, 720, 117 S.Ct. 2258, 138 L.Ed.2d 772 (1997) (quoting *Collins v. Harker Heights*, 503 U.S. 115, 125, 112 S.Ct. 1061, 117 L.Ed.2d 261 (1992)).

Aguilar, 510 F.3d at 22–24 (footnote omitted).

Like the petitioners in Aguilar, Petitioner's "claims seem markedly different from those scenarios that courts heretofore have recognized under the rubric of family integrity." 510 F.3d at 23. The Court recognizes the burden Petitioner's immigration proceedings and prolonged detention has placed on her family and is sympathetic to her situation. However, Petitioner has provided no authority in support of her claim. Accordingly, the Court recommends finding that Petitioner is not entitled to habeas relief on Claim 4.

**D. Medical**

In Count 5 of the petition, Petitioner asserts that "[f]ailure to provide post-surgical care violates detainee rights." (ECF No. 1 at 8.) Petitioner previously underwent gastric sleeve surgery and requires specialized nutrition, vitamin supplementation, and monitoring. Petitioner alleges that failure to provide care risks malnutrition, organ damage, and surgical complications. (Id. at 7.) Respondents argue that claims regarding medical issues are not cognizable in a federal habeas petition, citing to Pinson v. Carvajal, 69 F.4th 1059 (9th Cir. 2023). (ECF No. 9 at 3.)

A claim is cognizable in federal habeas corpus when a prisoner challenges "the fact or duration of his confinement" and "seeks either immediate release from that confinement or the shortening of its duration." Preiser v. Rodriguez, 411 U.S. 475, 489 (1973). In contrast, a civil rights action is the proper method to challenge the conditions of confinement. McCarthy v. Bronson, 500 U.S. 136, 141–42 (1991); Preiser, 411 U.S. at 499. The Ninth Circuit has "long held that prisoners may not challenge mere conditions of confinement in habeas corpus." Nettles v. Grounds, 830 F.3d 922, 933 (9th Cir. 2016) (en banc) (citing Crawford v. Bell, 599 F.2d 890, 891–92 (9th Cir. 1979)). See Shook v. Apker, 472 F. App'x 702, 702–03 (9th Cir. 2012) (holding that district court did not err in treating conditions of confinement claims as arising under Bivens v. Six Unknown Fed. Narcotics Agents, 403 U.S. 388 (1971), rather than 28 U.S.C. § 2241);

Alcala v. Rios, 434 F. App'x 668, 669–70 (9th Cir. 2011) (holding that district court did not err in finding that conditions of confinement claims are not cognizable under 28 U.S.C. § 2241).

In Pinson v. Carvajal, 69 F.4th 1059 (9th Cir. 2023), two federal prisoners "challenge[d] the dismissals of their habeas corpus petitions in which they asserted that their incarceration during the COVID-19 pandemic violated the Eighth Amendment and sought release from custody." Id. at 1062. Holding that "the relevant question is whether, based on the allegations in the petition, release is *legally required* irrespective of the relief requested," the Ninth Circuit found that "Sands has failed to allege facts to support his legal contention that his detention was unlawful because no set of conditions exist that would cure the constitutional violations." Id. at 1072, 1075. "Because Sands's claims lie outside the historic core of habeas corpus . . . the district court properly found it lacked jurisdiction to hear Sands's petition." Id. at 1075. Subsequently, the Ninth Circuit has stated that "Pinson solidified the rule that a habeas claim is one challenging the fact of confinement, rather than the conditions of confinement." Doe v. Garland, 109 F.4th 1188, 1194 (9th Cir. 2024).

"Petitioner's allegations that continued custody poses a substantial risk of serious harm, without more, do not state a habeas claim when the asserted constitutional violation is the alleged inadequacy of medical care and remedial measures short of release would address any such circumstance." Boscan v. Becerra, No. 1:26-CV-00651-KES-SAB, 2026 WL 310093, at *2 (E.D. Cal. Feb. 5, 2026). Accordingly, the Court recommends finding that Petitioner is not entitled to habeas relief on Claim 5.

**E. Remedy**

"The Court finds, consistent with other post-Jennings cases, that the appropriate remedy is a bond hearing before an immigration judge rather than immediate release." Lopez, 631 F. Supp. 3d at 882. See Doe v. Becerra, 697 F. Supp. 3d 937, 948 (N.D. Cal. 2023) ("[C]ourts in this Circuit have regularly found that the IJ is the proper authority to conduct bond hearings and determine a detainee's risk of flight or dangerousness to the community." (citing Martinez, 36 F.4th at 1223 ("district courts throughout this circuit have ordered immigration courts to conduct bond hearings for noncitizens held for prolonged periods"))); Mansoor v. Figueroa, No. 3:17-cv-

15

01695-GPC (NLS), 2018 WL 840253, at *4 (S.D. Cal. Feb. 13, 2018) ("The Court finds the IJ is uniquely qualified and situated to make neutral administrative determinations about Petitioner's eligibility for release on bond and/or placement in a supervised release program[.]").

The Court further finds that "the government must prove by clear and convincing evidence that an alien is a flight risk or a danger to the community to justify denial of bond" and that the bond hearing must comport with the other requirements of Singh v. Holder, 638 F.3d 1196, 1208 (9th Cir. 2011). See Martinez v. Clark, 124 F.4th 775, 785 (9th Cir. 2024) (stating that "the BIA properly noted that the government bore the burden to establish by clear and convincing evidence that Martinez is a danger to the community" with respect to a bond hearing ordered pursuant to the Due Process Clause). In the event Petitioner is "determined not to be a danger to the community and not to be so great a flight risk as to require detention without bond," the immigration judge should consider Petitioner's financial circumstances and alternative conditions of release. Hernandez, 872 F.3d at 1000. See Black, 103 F.4th at 138 (The district court "correctly directed the immigration judge ("IJ"), in setting his bond and establishing appropriate terms for his potential release, to consider his ability to pay and alternative means of assuring appearance.").

### III.

### RECOMMENDATION

Based on the foregoing, the Court HEREBY RECOMMENDS that:

1. The petition for writ of habeas corpus (ECF No. 1) be GRANTED on Count 3 and DENIED on all other counts; and

2. Respondents be directed to provide Petitioner with an individualized bond hearing before an immigration judge that complies with the requirements set forth in Singh v. Holder, 638 F.3d 1196 (9th Cir. 2011), and where "the government must prove by clear and convincing evidence that [Petitioner] is a flight risk or a danger to the community to justify denial of bond," id. at 1203. In the event Petitioner is "determined not to be a danger to the community and not to be so great a flight risk as to require detention without bond," the immigration judge should consider Petitioner's financial

circumstances and alternative conditions of release. Hernandez v. Sessions, 872 F.3d 976, 1000 (9th Cir. 2017).

This Findings and Recommendation is submitted to the assigned United States District Court Judge, pursuant to the provisions of 28 U.S.C. § 636 (b)(1)(B) and Rule 304 of the Local Rules of Practice for the United States District Court, Eastern District of California. Within **FOURTEEN (14) days** after service of the Findings and Recommendation, any party may file written objections with the Court, **limited to fifteen (15) pages in length, including any exhibits**. Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendation." Replies to the objections shall be served and filed within fourteen (14) days after service of the objections. The assigned District Judge will then review the Magistrate Judge's ruling pursuant to 28 U.S.C. § 636(b)(1)(C). The parties are advised that failure to file objections within the specified time may waive the right to appeal the District Court's order. Wilkerson v. Wheeler, 772 F.3d 834, 839 (9th Cir. 2014) (citing Baxter v. Sullivan, 923 F.2d 1391, 1394 (9th Cir. 1991)).

IT IS SO ORDERED.

Dated:    **April 28, 2026**

STANLEY A. BOONE
United States Magistrate Judge